RONALD J. PERROTE AND JANETTE M. PERROTE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Perrote v. Commissioner
Docket No. 14821-79.
United States Tax Court
T.C. Memo 1982-624; 1982 Tax Ct. Memo LEXIS 119; 44 T.C.M. (CCH) 1514; T.C.M. (RIA) 82624; October 26, 1982. *119 Held, petitioner failed to report $1,500 of taxable income. Held further, petitioner is not entitled to a home office deduction under sec. 280A(c)(1). Held further, petitioner is not entitled to a deduction for moving expenses in excess of the amount allowed by respondent. Ronald J. Perrote, pro se. Elizabeth S. Henn, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency of $346 in petitioners' Federal income tax for the taxable year 1977. Under Rule 41(a), [1] respondent requested the Court to redetermine and increase petitioners' deficiency to $656, pursuant to the Court's authority under section 6214(a). [2] Petitioner Janette Perrote did not appear at the trial. It appears that she had no actual notice of the trial date and may not have actually received a copy of the amendment. The notice of trial was mailed to the last known address of Janette Perrote but was returned by the Postal Service with the notation that she was not at *120 that address and had left no forwarding address. The amendment to the answer was served by the Court at such address, but was not returned. However, every party has an obligation to notify the Court of any change of address. Rule 21. The Court has granted respondent's oral motion to dismiss the petition as to Janette Perrote for failure properly to prosecute (Rule 123(b)), but under the particular circumstances of this case, we do not believe that it will serve any useful purpose to bind Janette Perrote by our determination as to the increase in the deficiency asserted by respondent in the amendment to the answer. Hereinafter, petitioner refers only to Ronald J. Perrote. After concessions, the issues to be decided are (1) whether petitioner failed to report $1,500 of income, (2) whether petitioner is entitled to a home office deduction under section 280A(c)(1), and (3) whether petitioner is entitled to a moving expense deduction in excess of that allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The parties stipulated that Ronald J. Perrote and Janette M. Perrote were husband and wife and resided in Austin, Texas, when the petition *121 in this case was filed. During the year 1977 petitioner was employed as Director of Institutional Research by Huston-Tillotson College in Austin, Texas. As Director, petitioner conducted research and evaluations of administrative functions of the college. Petitioner's research included such topics as student attrition, the feasibility and cost effectiveness of academic programs, and the payment of college costs. Petitioner's responsibilities as Director of Institutional Research required normal work hours of 8:00 a.m. to 5:00 p.m. weekdays, which petitioner regularly spent in the office provided him on campus. In 1977, petitioner designed and submitted to the Texas Coordinating Board, Texas College and University System, a proposal for a "Police-Community Involvement In Crime Prevention Program" (hereinafter Crime Program). The Texas Coordinating Board approved the proposal and granted Huston-Tillotson College funds to implement the program. The president of Huston-Tillotson College approved and accepted the grant in the college's name and maintained some degree of supervision over the program. In 1977, petitioner served also as Coordinator of the Consortium on Research Training *122 (hereinafter CORT) for Huston-Tillotson College, appointed by and under the supervision of the college president on the recommendation of the National Director of CORT. The National CORT granted Huston-Tillotson College approximately $4,500 in 1977 to distribute as "seed money" to encourage faculty members to undertake research projects. Completed projects were approved first by petitioner as representative of the college and then by the National CORT, after which they would be submitted with a check request by petitioner to the college business office which would distribute the funds. In addition to the remunerative incentive, participants undertook research projects to enhance their professional reputations and that of the college. As Coordinator, petitioner recruited interest on campus through newsletters drafted and distributed on campus, personal contacts on campus, and visits in the various departments, and provided technical assistance to participating faculty. Petitioner himself undertook a CORT project entitled "Some Ramifications of School Integration" (hereinafter the research project). He spent approximately 139 hours on this project, usually at home and after regular *123 working hours, between January 9, 1977, and June 18, 1977. Between January and July 1977, prior to marrying Mrs. Perrote, petitioner lived in a four-room apartment which included a living room containing a sofa, a lamp, a desk, and a telephone extension of a central number. Petitioner used this room in connection with his activity as Director of the Crime Program, as CORT Coordinator, and as author of the CORT research project. Petitioner also used this room to entertain social guests and as a general sitting room. [3]
In 1977, petitioner received 12 monthly checks drawn on the Huston-Tillotson College "Payroll Account" in the following amounts: January
$ 1,036.81
February
1,036.81
March
1,026.89
April
1,031.85
May
1,031.85
June
1,031.85
July
1,031.85
August
1,036.67
September
1,159.27
October
1,099.19
November
1,099.19
December
1,146.41
Total
$12,768.64 These checks represented petitioner's regular compensation (after deductions) as Director of Institutional Research, and did not include any separate, supplemental, or otherwise identifiable compensation for his activities as Director *124 of the Crime Program or CORT Coordinator. A Huston-Tillotson faculty member who participated in the Crime Program, Dr. Charles Urdy, received a separate single payment fee of approximately $500 for his Crime Program activity in addition to his regular compensation. Huston-Tillotson College provided petitioner with a 1977 W-2 Form which contained the following figures: Wages, tips, and other compensation
$17,307.00
Federal income tax withheld
2,745.42
FICA employee tax withheld
965.25
Total FICA wages
16,500.00
The W-2 Form indicated no other deductions or figures. At respondent's request, the Business Office, Huston-Tillotson College, prepared a memorandum entitled "Payroll Information - Dr. Ronald Perrote Earnings 1977" which listed the following figures: January
$ 1,401
February
1,401
March
1,401
April
1,401
May
1,401
June
1,401
July
1,401
August
1,401
September
1,599
October
1,500
November
1,500
December
1,500
Total
$17,307 The parties stipulated that this $17,307 figure represents total gross salary from the payroll account. On their 1977 Federal income tax return, petitioners reported $18,372.43 total income: $17,307 earned by petitioner from Huston-Tillotson College and $659.27, $220.66 and $185.50 earned *125 by petitioner Janette M. Perrote from separate employers. In 1977, petitioner also received a $1,500 check dated June 30, drawn on Huston-Tillotson's "Special Account" and bearing the memorandum "Completion of C.O.R.T. Project." The two faculty members at Huston-Tillotson College who also completed CORT projects, neither of whom served as Coordinator, also received $1,500 checks for their research projects. The compensation was paid petitioner for his own research project, and not for his activity as CORT Coordinator. This $1,500 paid to petitioner was not included on the W-2 Form furnished to petitioner for 1977. In the statutory notice of deficiency, respondent determined a deficiency of $346. By amended answer, respondent requested the Court to redetermine the deficiency as $656 to reflect the additional $1,500 petitioner received from Huston-Tillotson. We find that petitioner failed to report and pay tax on $1,500 of income received in 1977. [4] *126 OPINION Respondent bears the burden on the issue raised in his amended answer: whether petitioner reported the $1,500 he received from Huston-Tillotson College for his CORT research project. Rule 142(a). Our decision on this issue rests on a single finding (which we have made) of whether the $17,307 reported as "Wages, tips, and other compensation" on petitioner's 1977 W-2 Form supplied by Huston-Tillotson included the $1,500 at issue. Petitioner asserts but there is no evidence to support a finding that the $1,500 is reflected pro rata in the monthly figures shown on the "Payroll Information" memorandum prepared by the Huston-Tillotson Business Office. The $1,500 was paid in a single lump sum, by check drawn on Huston-Tillotson College's "Special Account," while the parties stipulated that the "Payroll Information" installment figures refer to the monthly checks drawn on the "Payroll Account." The $1,500 was compensation for services rendered by petitioner and was clearly gross income under *127 section 61. We are not able to fashion any argument or juggle the numbers in any manner to support petitioner's bare assertion. We find the evidence sufficient to sustain respondent's burden on this issue. The second issue concerns petitioner's deduction of home office expenses under section 280A(c)(1). Section 280A(a) provides: (a) General Rule.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an electing small business corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.
The exceptions to the general rule are provided for in section 280A(c) which states, in pertinent part: (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use. (1) Certain Business Use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) the principal place of business for any trade or business of the taxpayer, In the case of an employee, the preceding sentence shall apply only *128 if the exclusive use referred to in the preceding sentence is for the convenience of his employer. Section 280A(c)(5)(A) limits deductions allowable under section 280A(c) to the amount of gross income derived from the use of the home office during the taxable year. Petitioner does not dispute that the office provided him on campus was his principal place of business as Director of Institutional Research. Rather, he argues that his activities as CORT Coordinator, Director of the Crime Program, and author of the research project constituted separate trades or businesses which had their principal place of business at petitioner's home. Petitioner relies on this Court's holding in , where we held that a taxpayer could be engaged in more than a single trade or business and maintain a separate principal place of business for each trade or business. Petitioner received no separate, supplemental or otherwise identifiable income in 1977 from his activity as CORT Coordinator or as Director of the Crime Program. Therefore, even if petitioner showed these two activities to be separate trades or businesses with their principal place of business at *129 petitioner's residence, he could not claim a home office deduction with respect to these activities because of the limitation imposed by section 280A(c)(5)(A). ; , affd. without published opinion . Petitioner is thus left to establish that his authorship of the research project constituted a separate trade or business from his employment as Director of Institutional Research before we even need address the home office requirements imposed by section 280A(c). [5]
We are convinced, however, that petitioner has failed to meet his burden of establishing that his authorship of the research project constituted a separate trade or business from his employment as Director of Institutional Research. ; Rule 142(a). Petitioner offered no evidence concerning the nature of his responsibilities *130 as Director of Institutional Research other than that such responsibilities regularly included research and evaluations on such topics as we conclude on the evidence before us to be indistinguishable in their administrative scope from the CORT project. Petitioner received compensation from but a single institution, and conducted the research project under the supervision and for the enhancement of the reputation of that single institution, while participating in a program which recruited exclusively through the facilities and among the faculty of that institution. Under the facts before us, petitioner's only entitlement to participate in the CORT program and to receive compensation for such participation was as a faculty member. [6] In light of these facts, we are not convinced that the single fact that petitioner received income in addition to his regular "payroll" salary alone warrants a finding of a separate trade or business. [7] *131 Petitioner has thus failed to meet his burden of establishing a separate trade or business as required to enlist the aid of our holding in [8] *132 As petitioner concedes that his principal place of business as Director of Institutional Research was the office provided him on campus where he maintained normal work hours of 8:00 a.m. to 5:00 p.m. weekdays, ; , [9] we hold for respondent on this issue. The final issue is petitioners' claim of $1,644 for moving expenses. Respondent allowed petitioners all of this deduction except $114. At trial, petitioners offered no evidence to substantiate their expenses or otherwise meet their burden of disproving respondent's determination. ; Rule 142(a). We, therefore, find for respondent. , affg. on this point . Decision will be entered under Rule 155.
Footnotes
1. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
3. Petitioner testified at trial that he used the room "when I felt like it. * * * It is my house, I can sit where I want to sit."↩
4. There is an $827.69 discrepancy between the amount of gross income from Huston-Tillotson on which petitioner paid tax ($17,307) and the sum of income from monthly payroll checks ($12,768.64) plus Federal withholding ($3,710.67). Neither petitioner nor respondent offered any explanation of this discrepancy. However, simple arithmetic precludes us from holding the $1,500 at issue to account for the $827.69 discrepancy.
5. Our holding in , did not affect the rule that for purposes of applying sec. 280A, a single trade or business can support but a single principal place of business. .↩
6. It is not entirely clear from the record whether petitioner was technically a member of the college faculty, or simply an administrative employee, but for this purpose, at least, he was treated by the college as a faculty member.↩
7. For a discussion of the "commonsense" approach adopted by this Court in determining the existence of separate trades or businesses in similar contexts, see . See also , affd. ; ; .
8. Absent this threshold requirement, it is unnecessary for us to address the "exclusive use" requirement imposed by sec. 280A(c)(1). However, it is clear from petitioner's own testimony, that for the months of January through June 1977, during which he completed his CORT project and was living by himself in the rental apartment, the "exclusive use" requirement was not satisfied. 9. See also ; ; .↩